UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICK L. AMIE,<br><br>        Petitioner,<br><br>  v.<br><br>RICHARD KIRKLAND,<br><br>        Respondent. | 1:07-cv-00962-AWI-TAG HC<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS THE PETITION (Doc. 11)<br><br>ORDER DIRECTING OBJECTIONS TO BE FILED WITHIN FIFTEEN DAYS<br><br>ORDER DENYING PETITIONER'S MOTION TO EXPAND THE RECORD (Doc. 18)<br><br>ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT (Docs. 14, 23)<br><br>ORDER DENYING PETITIONER'S REQUEST FOR JUDICIAL NOTICE (Doc. 15) |

**PROCEDURAL HISTORY**

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The instant federal petition for writ of habeas corpus was originally filed on May 3, 2007 in the United States District Court for the Northern District of California, and transferred to this Court on July 5, 2007. (Doc. 4). The petition challenges the results of a 2002 prison disciplinary hearing finding Petitioner guilty of battery on an inmate. On November 28, 2007, the Court ordered Respondent to file a response (Doc. 7), and on March 13, 2008, Respondent filed the instant motion to dismiss, contending that Petitioner had not filed his petition within the time prescribed by 28 U.S.C. § 2244(d). (Doc. 11). Thereafter, the parties exchanged responses and

1

oppositions for nearly four months: Petitioner filed an opposition to the motion and a request for judicial notice (Docs. 14 & 15); Respondent responded to the opposition (Doc. 16); Petitioner filed a response to Respondent's response and a motion to expand the record (Docs. 17 & 18); Respondent opposed the motion to expand the record (Doc. 19); and Petitioner filed various responses to Respondent's opposition to the motion to expand the record and in support of the motion to dismiss. (Docs. 21, 22, & 23). In short, the matter has been exhaustively briefed and argued by both sides.

## DISCUSSION

### A. Procedural Grounds for Motion to Dismiss

Respondent has moved to dismiss the petition as being filed outside the one-year limitation period prescribed by Title 28 U.S.C. § 2244(d)(1). Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-603 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the court orders a response, and the court should use Rule 4 standards to review the motion.

In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one-year limitation period. Because Respondent's motion is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review the motion pursuant to its authority under Rule 4.

### B. Limitation Period for Filing a Petition for Writ of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 326, 117 S.Ct. 2059 (1997). The instant petition was filed on July 5, 2007, and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitation period begins running on the date that the petitioner's direct review became final. In a situation such as this, where Petitioner is challenging a prison disciplinary action, the Ninth Circuit has held that direct review is concluded and the statute of limitations commences when the final administrative appeal is denied. See Redd v. McGrath, 343 F.3d 1077, 1079 (9th Cir. 2003)(holding that the Board of Prison Term's denial of an inmate's administrative appeal was the "factual predicate" of the inmate's claim that triggered the commencement of the limitation period); Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2004)(holding that the statute of limitation does not begin to run until a petitioner's administrative appeal has been denied).

///

Here, Respondent has submitted documents establishing that, following the disciplinary hearing on September 2, 2002, Petitioner followed appropriate administrative channels within the prison system to challenge the results, ultimately appealing the disciplinary findings to the Director's Level, where it was denied on May 8, 2003. (Doc. 11, Exhs. 1-5). Therefore, applying the rule in Shelby and Redd, the limitation period commenced on May 9, 2003, the day after Petitioner was informed that his Director's Level appeal had been denied. Under 28 U.S.C. § 2244(d)(1)(D), Petitioner had one year from that date, or until May 8, 2004, absent applicable tolling, in which to file his federal petition for writ of habeas corpus. As mentioned, Petitioner did not file his federal petition until July 5, 2007, which was over three years *after* the limitation period had expired. Absent any applicable tolling, therefore, the petition is untimely.[1]

C.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Under the AEDPA, the statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). A properly filed application is one that complies with the applicable laws and rules governing filings, including the form of the application and time limitations. Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361 (2000). An application is pending during the time that 'a California petitioner completes a full round of [state] collateral review," so long as there is no unreasonable delay in the intervals between a lower court decision and the filing of a petition in a higher court. Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003) (internal quotation marks and citations omitted); see Evans v. Chavis, 546 U.S. 189, 193-194, 126 S. Ct. 846 (2006); see Carey v. Saffold, 536 U.S. 214, 220, 222-226, 122 S. Ct. 2134 (2002); see also, Nino v. Galaza, 183 F.3d 1003, 1006

---

[1]Shelby rejected the notion that remand for an evidentiary hearing was required to determine the date on which a petitioner found out about the results of an administrative hearing, apparently establishing instead a presumption that an inmate will in fact receive notice on the day the denial is issued, and that date will be used to calculate the statute of limitations unless the petitioner rebuts that presumption:

> "Here, as in Redd, Shelby does not dispute that he received timely notice of the denial of his administrative appeal on July 12, 2001, and he offers no evidence to the contrary. Therefore, the limitation period began running the next day."

Shelby, 391 F.3d at 1066.

4

(9th Cir. 1999).

There are circumstances and periods of time when no statutory tolling is allowed.  For example, no statutory tolling is allowed for the period of time between finality of an appeal and the filing of an application for post-conviction or other collateral review in state court, because no state court application is "pending" during that time.  Nino, 183 F.3d at 1006-1007.  Similarly, no statutory tolling is allowed for the period between finality of an appeal and the filing of a federal petition.  Id. at 1007.   In addition, the limitation period is not tolled during the time that a federal habeas petition is pending.  Duncan v. Walker, 533 U.S. 167, 181-182, 121 S.Ct. 2120 (2001); see also, Fail v. Hubbard, 315 F. 3d 1059, 1060 (9th Cir. 2001)(as amended on December 16, 2002).  Further, a petitioner is not entitled to statutory tolling where the limitation period has already run prior to filing a state habeas petition.  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Jiminez v. Rice, 276 F. 3d 478, 482 (9th Cir. 2001).  Finally, a petitioner is not entitled to continuous tolling when the petitioner's later petition raises unrelated claims.  See Gaston v. Palmer, 447 F.3d 1165, 1166 (9th Cir. 2006).

Here, the documents submitted by Respondent establish that Petitioner filed the following state habeas petitions: (1) filed in the Monterey County Superior Court on July 16, 2003 and denied on September 9, 2003 (Exhs. 6, 7); (2) filed in the Monterey County Superior Court on June 8, 2004 and denied on June 30, 2004 (Exhs. 8, 9); (3) filed in the California Court of Appeal, Sixth Appellate District ("6th DCA") on August 14, 2004 and denied on September 8, 2005 (Exh. 10); and (4) filed in the California Supreme Court on September 18, 2004 and denied on November 15, 2006 (Exh. 11).[2]

---

[2] In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk. Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379 (1988). The rule is premised on the pro se prisoner's mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might be adverse to his." Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see Houston, 487 U.S. at 271. The Ninth Circuit has applied the "mailbox rule" to state and federal petitions in order to calculate the tolling provisions of the AEDPA. Saffold v. Neland, 250 F.3d 1262, 1268-1269 (9th Cir. 2000), amended May 23, 2001, vacated and remanded on other grounds, Carey v. Saffold, 536 U.S. 214, 226 (2002). The date the petition is signed may be considered the earliest possible date an inmate could submit his petition to prison authorities for filing under the mailbox rule. Jenkins v. Johnson, 330 F.3d 1146, 1149 n. 2 (9th Cir. 2003). Accordingly, for all of Petitioner's state petitions, the Court will consider the date of signing of the petition

5

From the foregoing, the one-year statute of limitations would have commenced on May 9, 2003 and would have run until Petitioner filed his first state petition in the superior court on July 16, 2003, a period of sixty-nine days. The period recommenced the day following the denial of that first petition, on September 10, 2003.

Subsequently, Petitioner filed a successive petition in the Monterey County Superior Court rather than filing a petition in the 6th DCA. As Respondent correctly points out, the second, successive petition did not entitle Petitioner for tolling during the interval between the denial of the first petition and the filing of the second petition because interval tolling is appropriate only when a petitioner has sought review in a higher court of an adverse ruling in a lower court, i.e., when a petitioner is proceeding "up the ladder" in state court. See Nino, 183 F.3d at 1005 (running of limitation period tolled between disposition of an appeal or post-conviction petition and the filing of an appeal or successive petition at the next state appellate level); Dils v. Small, 260 F.3d 984, 986 (9th Cir. 2001)(interval tolling unavailable between successive state petitions filed in the state's highest court).

When the one-year period re-commenced on September 10, 2003, Petitioner would have had 296 days remaining, having already expended sixty-nine days before filing his first petition. Thus, Petitioner had 295 days from September 10, 2003, or until July 1, 2004, within which to file his federal petition. On that date, the one-year period expired. Although Petitioner filed two subsequent petitions in the 6th DCA and the California Supreme Court, a petitioner is not entitled to tolling where the limitations period has *already run* prior to filing a state habeas petition. Jiminez, 276 F.3d at 482; Green v. White, 223 F.3d 1001, 1003 (9th Cir. 2000).

Here, as mentioned, the limitations period expired on July 1, 2004, approximately six weeks *before* Petitioner filed his third state petition in the 6th DCA. Accordingly, Petitioner cannot avail himself of the statutory tolling provisions of the AEDPA for that petition or for the subsequent fourth petition filed in the California Supreme Court.

---

(or the date of signing of the proof of service if no signature appears on the petition) as the earliest possible filing date and the operative date of filing under the mailbox rule for calculating the running of the statute of limitation. For this reason, the dates the Court uses to calculate the running of the one-year period may vary slightly from the dates cited by Respondent, who uses, in some instances, the actual filing date rather than the signature date on the petition.

1    Petitioner, in his opposition to the motion to dismiss, argues that the one-year period did not
2    commence until 90 days after the Director's Level review, because his complaint is not with the
3    results of the appeal, which Petitioner contends resulted in a reduction in the nature of the charge to
4    battery and a resultant reduction in credit loss from 360 to 90 days, but with the failure of the prison
5    to actually implement that reduction and calculate it into his calculated release date.  (Doc. 14).  In
6    essence, Petitioner argues that it was only after the period for modifying or implementing the
7    Director's Level decision had expired that he could know with certainty the results of the disciplinary
8    hearing.  Petitioner is mistaken.

    While it is true that the initial Second Level Appeal Response dated December 5, 2002
reduced the charge from battery with serious bodily injury to "mutual combat," while reducing
Petitioner's credit loss from 360 days to 90 days (Exh. 3), an amended Second Level Appeal
Response dated February 4, 2003, and delivered to Petitioner on February 25, 2003, reversed that
earlier Second Level decision and re-imposed the original charge and the original 360 day credit loss.
(Exh. 4).  Thereafter, the Director's Level appeal resulted in an order affirming the amended Second
Level Response upholding the 360 day credit loss.  (Exh. 5).

    Since the Director's Level appeal was decided on May 8, 2003, Petitioner, as discussed
previously, is deemed to have known the factual basis for his present claim at that time.  Petitioner's
claim that he is entitled to an additional ninety days to permit Respondent to implement the decision
is spurious.  Petitioner confuses the starting date as defined by the AEDPA--the date Petitioner
could, through the exercise of reasonable diligence, ascertain the factual basis for his claim--with the
various regulations governing the prison administrative appeal.  The former governs the running of
the AEDPA's one-year statute in this case, not the latter.  Thus, even assuming, arguendo, that the
prison had 90 days to "implement" the 360 day credit loss after the Director's Level decision, that
did not in any way alter the fact that Petitioner had actual knowledge of the factual basis for his
present claim on May 8, 2003.

    Moreover, even from a practical perspective, Petitioner's argument has no merit. Petitioner
had lost his appeal at the Director's Level and there were no further administrative remedies that
might occur to alter or affect the 360 day credit loss determination.  Therefore, Petitioner cannot

seriously contend that he is entitled to an extra 90 days of statutory tolling while he awaited some unexplained, intervening force outside the administrative appeal process to reverse the Director's Level decision and reduce the amount of Petitioner's credit loss.

### D.  Equitable Tolling

The limitation period is subject to equitable tolling when "extraordinary circumstances beyond a prisoner's control make it impossible to file the petition on time." Shannon v. Newland, 410 F. 3d 1083, 1089-1090 (9th Cir. 2005)(internal quotation marks and citations omitted).  "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005). "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F. 3d 1062, 1066 (9th Cir. 2002)(citation omitted).  As a consequence, "equitable tolling is unavailable in most cases." Miles, 187 F. 3d at 1107.

Petitioner contends he is entitled to equitable tolling because of irregularities in the appeals of his disciplinary hearing. (Doc. 21).  Petitioner argues the merits of his petition, alleging that the amended second level response was "false," that no medical reports showed serious bodily injury, that the second level response was written in response to a telephone call from Pelican Bay State Prison officials to Salinas Valley State Prison officials regarding the "mistake" made in reducing the credit loss, and that these "claims" were not known to him at the time, thus entitling him to equitable tolling.

Petitioner misunderstands the nature of equitable tolling.  As mentioned, it is reserved for those rare situations when extraordinary circumstances beyond the control of a Petitioner prevents him from filing his federal petition.  Here, the grounds asserted by Petitioner do not bear upon circumstances that prevented him from filing his federal petition, but rather on reasons why Petitioner might not have discovered the factual basis for his claim until a later date.  Even on that

1  point, however, Petitioner is mistaken. Under § 2244(d)(1)(D), the one-year limitation period
2  commences on the date when "the factual predicate of the claim or claims presented could have been
3  discovered through the exercise of due diligence," Hasan v. Galaza, 254 F.3d 1150, 1154, fn. 3 (9th
4  Cir. 2001)(quoting Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)), not when the factual
5  predicate was actually discovered by Petitioner, and not when Petitioner finally understands the legal
6  theories available to him or the legal significance of the facts that he discovers.

7  Here, Petitioner contends in essence that he could not have discovered his claim until all of
8  the evidence he has submitted to the Court was discovered by him. This is incorrect. Petitioner
9  knew or should have known of the factual basis for his claim, i.e., the upholding of the original
10  disciplinary findings and punishment, on the date of the Director's Level decision, not some later
11  date when Petitioner discovered additional evidence relating to his claim. Construing the statute of
12  limitations to commence only when a petitioner has discovered all relevant evidence supporting his
13  claim would render the limitation period meaningless since there is always additional evidence that
14  could be discovered and submitted to support a petitioner's claims.

15  Petitioner also contends that he is entitled to equitable tolling based on "actual innocence."
16  (Docs. 21 & 23). Petitioner contends that because the original Second Level decision reduced the
17  charge to "mutual combat," Respondent has effectively recognized that he is innocent. This
18  argument also fails.

19  Neither the Supreme Court nor the Ninth Circuit has addressed whether there is an actual
20  innocence exception to a violation of § 2244(d)'s limitation period.[3] The Ninth Circuit has only
21  excused a violation of the limitations period in cases where the petitioner was entitled to equitable
22  tolling. See Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1287-1289 (9th Cir.

---

[3]The difference between "newly discovered" evidence of innocence that extends the commencement point of the one-year limitation period under subdivision (d)(1)(D), and the "actual innocence" exception is that a claim filed within one year of the discovery of new evidence proceeds directly to the district court for a determination of the merits of the habeas petitioner's constitutional claims. By contrast, under the Schlup actual innocence gateway, the petitioner must clear the procedural bar of demonstrating a credible claim of actual innocence before a court will reach the merits of his constitutional claims. Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851 (1995). Because one must meet a significantly greater burden to pass through the gateway, no petitioner would forego filing within the one-year period if possible. The actual innocence exception would be limited to the rare and extraordinary case where a petitioner can demonstrate a credible claim of actual innocence and the one-year limitations window has closed. Souter v. Jones, 395 F.3d 577, 600-601 (6th Cir. 2005). As discussed infra, Petitioner fails to meet the actual innocence gateway and the one-year window has already closed.

9

1997).

Even if the Court were to conclude that an actual innocence exception to a violation of the limitations period existed, Petitioner has not met the standard for actual innocence. Petitioner must show that the alleged constitutional error "has probably resulted in the conviction of one who is actually innocent." Bousley v. United States, 118 S.Ct. 1604, 1611, 118 S. Ct. 1604 (1998)(quoting Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639(1986)). Petitioner must demonstrate that in light of the evidence no reasonable juror would have found him guilty. Schlup v. Delo, 513 U.S. 298, 329, 115 S.Ct. 851, 867-868 (1995). Petitioner fails to meet such a high standard.

The original disciplinary decision found by a preponderance of the evidence that Petitioner had committed the charged offense based on several witnesses' oral and written accounts, including Officer Reeder, who saw Petitioner kneeling over the victim striking him with his fists, Sgt. Herrera, who observed the victim lying unconscious in the prison yard, Officer Mata, who also observed the victim lying unconscious for approximately five second, and the medical reports that indicate the victim suffered facial contusions and various abrasions. (Exh. 1).

Petitioner contends that because the original Second Level decision reduced the magnitude of his charge and also reduced his credit loss, Respondent recognized that he was not guilty of the original charge of battery with serious bodily injury. Petitioner also suggests that the lack of medical reports regarding the victim's bodily injuries and the reports of corruption at the prison are probative of his innocence.

Viewing all of these circumstances together, it is patent that Petitioner has failed to demonstrate that no reasonable juror would have found him guilty of battery with serious bodily injury by a preponderance of the evidence. Schlup, 513 U.S. at 329. Thus, Petitioner has failed to establish his claim of "actual innocence." Accordingly, even if there is an "actual innocence" component of equitable tolling, Petitioner cannot avail himself of it.

Because Petitioner's claims do not qualify him for equitable tolling, the petition is untimely and must be dismissed.

E. Motion to Expand the Record

In conjunction with his opposition to the motion to dismiss, Petitioner has filed a motion to

10

expand the record pursuant to Rule 7. (Doc. 18). In that motion, Petitioner asks to expand the record to include all inmate appeals 602 forms submitted by Petitioner concerning the facts of this case, all legal status summary sheets reflecting Petitioner's earliest possible release dates, and all state habeas petitions and court decisions related to this case. Respondent opposes the motion. (Doc. 19). The Court notes that Respondent has already filed as exhibits to the motion to dismiss all of Petitioner's relevant 602 forms and administrative documents, all relevant state habeas petitions, and court decisions thereon.

The Court fails to see the relevance of documents pertaining to Petitioner's release date since the question of his release date has no bearing on the 2002 disciplinary hearing. Presumably, Petitioner wishes to ascertain if the original 360 credit loss has been factored into his release date or whether some other figure is being used. Petitioner's curiosity, however, about his release date is not a proper basis for expanding the record of these proceedings. Since the record <u>already</u> contains all the relevant documents Petitioner has sought in his motion to expand the record except for the documents relating to his release date, which are irrelevant, his request to expand the record is moot and the Court denies it.

F. Motion for Summary Judgment

Petitioner also argues that he is entitled to summary judgment. (Docs. 14, 23). Although the motion is vague, at best, regarding the grounds for a summary judgment motion, it appears that Petitioner wishes the Court to grant the petition on the merits and disregard Respondent's defense of untimeliness. The motion lacks merit.

On motion for summary judgment, all inferences are drawn and doubts resolved in favor of the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). The moving party bears the initial burden to "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). Once the moving party has met its burden, the burden shifts to the nonmoving party to "show that there is a genuine issue for trial." <u>Matsushita</u> 475 U.S. at 586.

Given the nature of a habeas corpus petition, <u>Anderson v. Butler</u>, 886 F.2d 111, 113 (5th Cir. 1989) (modern habeas corpus procedure has the same function as an ordinary appeal); <u>O'Neal v.</u>

11

1  McAnnich, 513 U.S. 440, 442, 115 S.Ct. 992 (1995) (federal court's function in habeas corpus
2  proceedings is to "review errors in state criminal trials"(emphasis omitted)), motions for summary
3  judgment are unnecessary because petitions may be decided immediately by the Court following
4  submission of the pleadings provided no material issues of fact exist.  See 1 J. Liebman, Federal
5  Habeas Corpus Practice and Procedure, § 17.3 (1988) (The habeas corpus statute authorizes --
6  indeed, it seems to *require* -- the court treat the petition itself as the equivalent of a petitioner
7  initiated summary judgment motion).
8          In its order of November 28, 2007 setting a briefing schedule in this case, the Court advised
9  the parties that "[a]ll motions shall be submitted on the record and briefs filed without oral argument
10 unless otherwise ordered by the Court."  (Doc. 7).  Thus, to the extent that Petitioner is seeking
11 summary judgment as to the timeliness issue, the motion is denied as moot in light of the Court's
12 findings and recommendations, which are based entirely on the record and the undisputed facts
13 contained therein.  To the extent that Petitioner is requesting a summary judgment on the merits of
14 his petition, as distinct from the issue of timeliness raised in this motion to dismiss, that motion is
15 premature.  The procedural posture of the case is such that the Court is presently only concerned with
16 whether the petition is timely.  The Court will only reach the issue of the merits of the case if and
17 when it concludes that the petition is timely and that this case should proceed forward.
18          G.  Request for Judicial Notice
19          Petitioner also has submitted various documents, many of them already part of the record,
20 and has requested that the Court take judicial notice of them for these proceedings.  (Doc. 15).
21 Exhibits 1, 2, and 3 are already part of the present record.  Exhibit 4 contains a newspaper article
22 taken from the Monterey Herald's website, dated September 8, 2004, regarding the charging of a
23 Salinas Valley State Prison correctional officer with arranging and covering up gang-related beatings
24 of inmates.  A second attachment in Exhibit 4 is a document entitled, "Effect of Values and
25 Leadership on the Group Dynamics Leading to the Formation of the "Green Wall," relating to the
26 formation of a "code of silence" by correctional officers.
27          The Court may take notice of facts that are capable of accurate and ready determination by
28 resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United

States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993).  Here, the first three documents are already part of the record; accordingly, Petitioner's request is moot as to those documents.  The newspaper article and the document discussing the "green wall" are irrelevant to the motion to dismiss.  Fed. R. Civ. P. Rule 401.  Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Id.  Here, the only issue presently before the Court is Respondent's motion to dismiss the petition as untimely.  Articles about correctional officers committing crimes and the "code of silence" within the correctional fraternity do not tend to make the existence of any fact of consequence to the timeliness issue more or less probable than without that evidence.  Accordingly, the Court will deny Petitioner's request for judicial notice.

**ORDER**

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1. Petitioner's motion to expand the record (Doc. 18), is DENIED;

2. Petitioner's motion for summary judgment (Docs. 14, 23), is DENIED; and,

3. Petitioner's request for judicial notice (Doc. 15), is DENIED.

**RECOMMENDATIONS**

Accordingly, the Court HEREBY RECOMMENDS that Respondent's motion to dismiss (Doc. 11), be GRANTED and the habeas corpus petition (Doc. 4), be DISMISSED for Petitioner's failure to comply with 28 U.S.C. § 2244(d)'s one-year limitation period.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty (20) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Responses to the objections shall be served and filed within ten (10) days after service of the objections.  **Petitioner and Respondent are forewarned that no extensions of time to file objection or responses will be granted.**

The District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 15, 2009**  　　　　　　　　　　　　**/s/ Theresa A. Goldner**
　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE